IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

NORTHERN DIVISION

| | |
|---|---|
| K.S., and Z.S.,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, and the ACCENTURE LLP BENEFITS PLAN,<br><br>Defendants. | **ORDER AND MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Case No. 1:22-cv-00004-TC-DBP<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

Plaintiff K.S., the mother of Plaintiff Z.S., was a participant in Defendant the Accenture

LLP Benefits Plan (the Plan) through her employer Accenture LLP.  As a dependent of K.S., Z.S.

was a beneficiary of the Plan.  K.S. sought coverage under the Plan for the residential mental

health treatment that Z.S. received from February 5, 2019, to March 8, 2020, at a Utah facility

called "Elevations."  Defendant Cigna Health and Life Insurance Company (Cigna), the Plan's

designated claims administrator, denied coverage for Z.S.'s treatment under the Plan.  K.S. twice

appealed Cigna's decision to deny coverage, and Cigna upheld its determination at both levels of

appeal.  The Plaintiffs then sued the Defendants in this court, asserting two claims: 1) a claim for

the recovery of benefits under the Employee Retirement Income Security Act (ERISA), 29

U.S.C. § 1132(a)(1)(B) (the denial of benefits claim), and 2) a claim for a violation of the Mental

Health Parity and Addiction Equity Act (the Parity Act), 29 U.S.C. § 1132(a)(3).  All parties have

moved for summary judgment on the denial of benefits claim.  (See Pls.' Mot. for Summ. J., ECF

No. 40; Cigna's Mot. for Summ. J., ECF No. 44; Plan Mot. for Summ. J., ECF No. 45.[1])

---

[1] The Plan's motion "incorporates by reference the Statement of Undisputed Material Facts and the Arguments section of Cigna's Motion for Summary Judgment."  (ECF No. 45 at 2 (citing D[U]CivR 7-1(a)(8)).)  The Plan's opposition brief also "incorporates by reference, … Cigna's

## BACKGROUND

### I.      Z.S.'s Medical History Before Elevations

Z.S. has struggled with mental health issues for most of his childhood and adolescence. Born in 2003 and assigned female at birth, Z.S. came out to his parents as a transgender male in middle school.  (Administrative Record (AR)[2] at 2671–72.)  His struggles with gender dysphoria, depression, anxiety, and other mental health issues led him to engage in self-harming behaviors throughout adolescence, including cutting and suicidal ideation.  (Id. at 3922.)  Z.S. attempted suicide three times.  (Id. at 3935.)

Because of his mental health struggles, Z.S. saw many therapists, some of whom expressed concern over Z.S.'s suicidal ideation and cutting, and recommended to Z.S.'s parents that Z.S. be hospitalized.  (Id. at 2672–73, 2822.)  After being hospitalized three times, enrolling in a partial hospitalization program (PHP), and completing multiple intensive outpatient programs (IOPs), Z.S.'s psychiatrist recommended that Z.S.'s parents begin looking into residential treatment for Z.S.  (Id. at 2673–74, 2725–35, 2747–55, 2808, 3923.)  In May 2018, Z.S. was admitted to Evolve Treatment Center and stayed for 30 days.  (Id. at 2808.)

When Z.S. was discharged from Evolve, Evolve's clinical staff suggested that Z.S.'s parents consider long-term residential treatment for Z.S. or at least a placement in another IOP. (Id. at 2674.)  Z.S.'s parents decided to enroll him in another IOP at Sage Wellness, which he

---

Response to Plaintiffs' Statement of Undisputed Facts, Counter-Statement of Additional Undisputed Material Facts, and Sections III.A.I, A.2(b), and A.3 in Cigna's Memorandum of Law in Opposition" but states that the Plan takes no position on Section III.A.2(b) in Cigna's Opposition.  (Plan Resp. in Opp'n, ECF No. 52 at 2.)  At the June 12, 2024 hearing on the motions for summary judgment, the Plan clarified that it was not taking a position on Section III.A.2(a) (the arguments about Cigna's denial letters) in Cigna's opposition brief.

[2] The lengthy Administrative Record has been split into sections and docketed at ECF Nos. 43-1 to 43-4.

successfully completed.  (<u>Id.</u> at 2756–78, 2808.)  But a few weeks later, Z.S. admitted to his

parents that he was cutting again and having suicidal thoughts.  (<u>Id.</u> at 2674.)  Z.S. was admitted

to the hospital for a fourth time.  (<u>Id.</u> at 2674, 2808.)  Z.S.'s parents then found the Polaris Team

Center (Polaris), a short-term residential treatment program where Z.S. enrolled and had some

success between December 2018 and early February 2019.  (<u>Id.</u> at 2806, 2808, 3922–23.)  Even

so, Polaris' clinical staff recommended that Z.S.'s parents consider long-term residential mental

health treatment for Z.S.  (<u>Id.</u> at 2675.)  The record shows that Z.S. engaged in self-harming

behavior about two weeks before he got to Elevations (<u>id.</u> at 3923, 4795), which means that he

self-harmed while at Polaris.

## II.    Z.S.'s Treatment at Elevations

Z.S.'s parents enrolled Z.S. into long-term residential treatment at Elevations on February

5, 2019.  (<u>Id.</u> at 4156.)  Elevations staff completed a psychiatric admission evaluation for Z.S. on

February 6, 2019.  (<u>Id.</u> at 3922.)  Z.S.'s "Admission Criteria" included: "history of suicide

attempts; chronic history of suicidal ideation; history of chronic self-mutilation; … failed

inpatient, outpatient, short term residential, IOP, and PHP treatment; inadequate community

support systems/resources including inability to be contained in the home setting due to extreme

self-harm attempt history[.]"  (<u>Id.</u>)  Z.S.'s "History of Present Illness" read as follows:

> [Z.S.] presents to Elevations Residential Treatment Center as a 15-year-old
> student upon transfer from short-term residential experiential program 'Polaris'.
> [Z.S.] has been predominantly in high acuity settings over the preceding year,
> which includes 5 inpatient hospitalizations over a preceding 15 months, multiple
> partial hospitalization placements after inpatient hospitalizations, and two short-
> term residential programs.  [Z.S.] was placed in these settings to combat severely
> chronic suicidal and self-harm ideation, with repetitive attempts and <u>failure to find
> significant success despite the amount of intervention.</u>  Numerous medication
> trials have occurred, with limited efficacy to date…. [Z.S.] was noted to have
> significant anxiety with periodic anger issues as a youth, which gradually
> developed into severe depression since late elementary school.  Gender dysphoria
> became a more overt and understood part of his formulation around the age of 11

> to 12 … Despite interventions, he has continued to have body and gender dysphoria amplifying depressive and anxious symptoms. [Z.S.] has struggled with body image, and has engaged in periodic restriction, but more commonplace binge eating. ADHD related symptoms have been diagnosed over recent years[.]

(Id. (emphasis added).) Based on the evaluation, Z.S.'s diagnosis included major depressive disorder, generalized anxiety disorder, social anxiety disorder, panic disorder, gender dysphoria, and non-suicidal self-harm. (Id. at 3925.) Staff also made a preliminary treatment plan for Z.S., which directed that he "[would] be placed in weekly individual and family therapy, with daily group therapy[,]" continue taking medications, and that his "[e]stimated length of stay [was] … 4 to 12 months … [and his] [a]nticipated discharge disposition [would be an eventual] step-down to lower acuity setting vs. home with wrap around services." (Id.)

Z.S.'s risk level for self-harm and suicidal behaviors varied while at Elevations. Clinical staff deemed Z.S. to be a "Mild Risk" for self-harm and suicidal behaviors upon entering Elevations because he did not have suicidal thoughts or a suicidal plan. (Id. at 3935.) But Z.S. stated on February 6, 2019 (a day after admission to Elevations), that he had "suicidal and self-harm urges … upon admission." (Id. at 3923 (emphasis added).) On February 7, 2019, Z.S.'s Primary Therapist Andrea Hanson deemed him to be a "Moderate Risk," noting "[r]egular thoughts" and a "[v]ague plan." (Id. at 3920.) At various times in March, April, and May 2019, Ms. Hanson noted that "[Z.S.] [was] at high risk for self-harm and suicidal behavior outside of a restricted environment[.]" (Id. at 3759, 3764; see also id. at 3466, 3476, 3540, 3664, 3729, 3734.) On May 6, 2019, "[Z.S.'s] lack of insight and low ability to regulate his mood [made] him likely to engage in self-harm and suicidality outside of a residential environment." (Id. at 3717 (emphasis added).) At various points throughout his stay, Z.S. also reported having no thoughts of hurting himself to Ms. Hanson. (Id. at 2924, 3515.)

### III.    The Plan

The Plan provides coverage for behavioral health and medical/surgical services rendered by in-network and out-of-network providers, so long as the care received is "medically necessary."[3]  This means that the Plan gives coverage for medically necessary services for mental health and substance use disorders, including inpatient and outpatient mental health services.  (Id. at 4686–87, 4746–47.)  The Plan excludes coverage for "care, treatment, or surgery" not medically necessary for Plan participants and any dependents.  (Id. at 4755, 4695.) The Plan defines "medically necessary" as follows:

> Health care services, supplies and medications provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, condition, disease or its symptoms, that are all of the following as determined by a Medical Director or Review Organization:
> - required to diagnose or treat an illness, Injury, disease or its symptoms;
> - in accordance with generally accepted standards of medical practice;
> - clinically appropriate in terms of type, frequency, extent, site and duration;
> - not primarily for the convenience of the patient, Physician or other health care provider;
> - not more costly than an alternative service(s), medication(s), or supply(ies) that is at least as likely to produce equivalent, therapeutic or diagnostic results with the same safety profile as to the prevention, evaluation, diagnosis or treatment of your Sickness, Injury, condition, disease or its symptoms; and
> - rendered in the least intensive setting that is appropriate for the delivery of services, supplies or medications.  Where applicable, the Medical Director or Review Organization may compare the cost-effectiveness of alternative services, supplies, medications or settings when determining least intensive setting.

(Id. at 4709, 4769.)  The Plan also defines "Mental Health Residential Treatment Services" as services provided "for the evaluation and treatment of the psychological and social functional disturbances that are results of subacute Mental Health conditions."  (Id. at 4686.)  The Plan defines "Mental Health Residential Treatment Center" as:

---

[3] The parties agree that Elevations was an in-network or participating provider with Cigna.

[An] institution which specialize[s] in the treatment of psychological and social disturbances that are the result of Mental Health conditions; provides a subacute, structured, psychotherapeutic treatment program, under the supervision of Physicians; provides 24-hour care, in which a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency as a residential treatment center[.]

(Id.)

It is undisputed that Cigna used its Standards and Guidelines/Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents to review the Plaintiffs' claim for coverage.  (See id. at 4425–4652.)  These Guidelines describe the medical necessity criteria for Residential Mental Health Treatment for Children and Adolescents as:

- All elements of Medical Necessity must be met.
- The child/adolescent has been diagnosed with a moderate-to-severe mental health disorder, per the most recent version of the Diagnostic and Statistical Manual of Mental Disorders and evidence of significant distress/impairment.
- This impairment in function is seen across multiple settings such as: school, home, work, and in the community, and clearly demonstrates the need for 24 hour psychiatric and nursing monitoring and intervention.
- As a result of the interventions provided at this level of care, the symptoms and/or behaviors that led to the admission can be reasonably expected to show improvement such that the individual will be capable of returning to the community and to a less restrictive level of care.
- The child/adolescent is able to function with age-appropriate independence, participate in structured activities in a group environment, and both the individual and family are willing to commit to active regular treatment participation.
- There is evidence that a less restrictive or intensive level of care is not likely to provide safe and effective treatment.

(Id. at 4456.)

## IV.   Cigna's Denials and the Appeals Process

### A.  Cigna's Initial Denial of Coverage

On February 15, 2019, Cigna sent a letter to the Plaintiffs denying the Plaintiffs' claim for coverage.  (See ECF No. 40 at 18; see also Cigna Resp. in Opp'n, ECF No. 50 at 5.)  The letter confirmed that Cigna "received [the] request to cover the following service(s): Residential

Mental Health Treatment for Children and Adolescents." (AR at 418.) But after reviewing the submitted information, Cigna "determined [it] [could not] approve [the] request" for coverage. (Id.) Specifically,

> [Cigna] reviewed information from Elevations RTC, your health plan and any policies and guidelines needed to reach this decision. We found the service requested is not medically necessary in your case.
>
> Based upon the available information, [Z.S.'s] symptoms do not meet the Cigna Behavioral Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents for continued stay from 02/05/2019 forward as the treatment provided has led to sufficient improvement in the symptoms and/or behaviors that led to this admission so that you could be safely and effectively treated at a less restrictive level of care.

(Id. at 419.)

The Plaintiffs twice appealed Cigna's determination denying coverage. The parties agree that the Plaintiffs exhausted their administrative appeal obligations under the Plan. (ECF No. 50 at 5.)

### B. First Appeal

The Plaintiffs submitted their first level appeal on December 26, 2019. (AR at 2668.) The Plaintiffs attached letters from three individuals who each opined on whether Z.S.'s treatment at Elevations was medically necessary. (Id. at 2821–26.) These individuals were: 1) Dr. John Abraham, D.O.; 2) Greg Miller, Licensed Marriage and Family Therapist; and 3) Ryan Dillon, Licensed Professional Counselor. (Id. at 2822, 2824, 2826.) Dr. Abraham treated Z.S. from April 2016 to October 2018. (Id. at 2822.) Mr. Miller treated Z.S. from August 10, 2016, to August 22, 2017. (Id. at 2824.) And Mr. Dillon treated Z.S. from August 2017 through September 2018. (Id. at 2826.) Each treating provider expressed the view that Z.S.'s treatment at Elevations was medically necessary. (See id. at 2822, 2824, 2826.)

On January 28, 2020, Cigna sent a letter affirming its denial of coverage for the period

from February 5, 2019, through October 17, 2019.  (Id. at 444.)  The letter included Z.S.'s

information and explained its appeal decision:

> After reviewing the appeal submitted by Elevations Rtc, the original decision to deny Residential Mental Health Treatment for Children and Adolescents from 02/05/2019–10/17/2019 is upheld.  All the original information in your file, the information submitted with this request and the terms of your benefit plan were reviewed.
>
> Please know that a Physician Board Certified in Psychiatry also reviewed your information and agrees with this decision.
>
> **More About the Decision**
> This decision was made on January 28, 2020 by Bettina Kilburn, MD, Board Certified Psychiatrist.
>
> This decision was based on the following:
>
> Based upon the available clinical information received initially and with this appeal, your symptoms did not meet Behavioral Health Medical Necessity Criteria for admission and continued stay at Residential Mental Health Treatment for Children and Adolescents level of care from 02/05/2019-10/17/2019 as although you had long term symptoms and a lengthy treatment history you did not show a clear need for 24 hour nursing and psychiatric monitoring and intervention.  The proposed evaluations, medication management, and therapies did not require this intensity of service.  You had previous and recent opportunity to learn the coping skills needed to participate in less restrictive treatment.  There is no information reported that indicates that this level of care was necessary to achieve measurable clinical improvement that could not have been promoted safely and effectively in a less restrictive level of care.  Less restrictive levels of care were available for safe and effective treatment.

(Id. at 444–45.)

### C.  Second Appeal

The Plaintiffs submitted their second level appeal to Cigna on March 23, 2020.  (ECF No.

50 at 11.)  On April 24, 2020, Cigna sent a final letter upholding its denial of the Plaintiffs' claim

for coverage.  (AR at 2652.)  Cigna's letter stated:

This decision was made on April 23, 2020 by Robin Pedowitz, M.D., Medical Director, Board Certified in Psychiatry, Board Certified in Child/Adolescent Psychiatry.

This decision was based on the following:

Based upon the available clinical information received initially and with this appeal, your symptoms did not meet Behavioral Health Medical Necessity Criteria for admission and continued stay at Residential Mental Health Treatment for Children and Adolescents level of care from 02/05/2019–03/09/2020 as although you were demonstrating impairments in functioning secondary to a mental health disorder, you did not have symptoms requiring active treatment at a 24 hour level of care.  You had just discharged from previous mental health residential treatment and that treatment resulted in clinical improvement such that you were no longer requiring treatment at a 24 hour level of care.  While you do have a history of chronic, intermittent suicidal ideation, at the time of your admission you had not recently demonstrated actions or made serious threats of harm to yourself or others as a result of a mental health disorder that were of such severity to require the intensity of treatment intervention and 24 hour monitoring of a Residential Mental Health Treatment program for your safe and effective treatment.  You were not reported to be exhibiting aggressive behavior or disordered thinking.  You were showing behavioral control.  You were not reported to have medical instability.  You were compliant with medications and tolerating them.  You were able to care for your basic needs.  You were described as having a supportive family.  Less restrictive levels of care were available to assist you with continuing to learn healthy coping skills and for medication management.

(Id. at 2653.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In an ERISA case, when the parties have both moved for summary judgment and effectively stipulated that no trial is necessary, "summary judgment is merely a vehicle for deciding the case[.]"  See LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted).  In these cases, "the factual determination of

eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." Id. (citation omitted).

In ERISA denial of benefits actions, like this one, a threshold issue that the court must decide is what standard of review applies to a plan administrator's determination that benefits be denied.  The Supreme Court has stated that "a denial of benefits challenged under [ERISA, 29 U.S.C.] § 1132(a)(1)(B)[,] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When a plan administrator has this discretion, the court "review[s] the denial of benefits under an arbitrary and capricious standard." D.K. v. United Behav. Health, 67 F.4th 1224, 1235 (10th Cir. 2023).

The parties agree that the Plan gives Cigna discretionary authority.  (See ECF No. 40 at 23; ECF No. 44 at 2.)  "Under arbitrary and capricious review, the actions of ERISA administrators are upheld if reasonable and supported by substantial evidence." D.K., 67 F.4th at 1235.  An administrator's decision must be "based upon the record as a whole[,]" and the court "must take[] into account whatever in the record fairly detracts from its weight." Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002).  The Tenth Circuit treats "the arbitrary-and-capricious standard as interchangeable" with "the abuse-of-discretion standard[.]" Foster v. PPG Indus., Inc., 693 F.3d 1226, 1231–32 (10th Cir. 2012) (citation omitted).

But while the arbitrary and capricious standard is a deferential standard of review, see Weber v. GE Grp. Life Assurance Co., 541 F.3d 1002, 1010 (10th Cir. 2008), "[a] plan administrator may forfeit the deferential standard when it fails to follow certain ERISA procedures." D.K. v. United Behav. Health, No. 2:17-cv-1328, 2021 WL 2554109, at *6 (D.

Utah June 22, 2021), aff'd, 67 F.4th 1224 (10th Cir. 2023). "When the administrator's actions or structure threaten their ability to act as a proper fiduciary, the [Supreme] Court has given administrators' decisions less deference." D.K., 67 F.4th at 1244 (citing cases).

A showing that a plan administrator failed to follow ERISA procedures provides a basis for relief separate from that provided by a review of the merits of the claim. See David P. v. United Healthcare Ins. Co., 77 F.4th 1293, 1309 (10th Cir. 2023) (holding that the plan administrator acted arbitrarily and capriciously "because the manner in which it denied Plaintiffs' claims for benefits violated ERISA's claims-processing requirements"); see also R.E. v. Blue Cross Blue Shield of Ill., No. 2:22-cv-296, 2023 U.S. Dist. LEXIS 229908, at *24 (D. Utah Dec. 27, 2023) (concluding that where plaintiffs were entitled to reversal based on their procedural argument, the court need not address the plaintiffs' merits-based argument).

## ANALYSIS

The Plaintiffs give two reasons why Cigna's denials should be reversed under an arbitrary and capricious standard of review. They first allege that there were extensive deficiencies in Cigna's denial letters and that these deficiencies provide grounds for relief. (ECF No. 40 at 23.) The Plaintiffs then argue in the alternative that the record shows that Z.S.'s treatment at Elevations was medically necessary. (Id. at 25.) In the event the court finds that Cigna's denials were arbitrary and capricious on either ground, the Plaintiffs claim that an award of benefits—rather than remand—is the appropriate remedy. (Pls.' Reply, ECF No. 58 at 16–17.)

The Defendants maintain that Cigna's denials were not arbitrary and capricious. They argue that Cigna's denial letters were legally sufficient and that Cigna's denials were based on substantial evidence in the record showing that Z.S.'s treatment at Elevations was not medically necessary. (ECF No. 50 at 14–19; see ECF No. 44 at 12–19.) The Defendants maintain that

remand is the appropriate remedy should the court find that Cigna's denials were arbitrary and capricious.

Accordingly, there are three issues for the court to discuss. The court addresses each in turn.

## I.   Procedural Ground(s) for Relief

The Plaintiffs advance four reasons in support of their contention that Cigna failed to follow ERISA procedures: 1) Cigna failed to cite to specific provisions of the Plan justifying its denials; 2) Cigna failed to adequately address "medical necessity" and failed to explain its judgment about why it denied the Plaintiffs' claim on that basis; 3) Cigna failed to address and engage with opinions by Z.S.'s treating clinicians that Z.S. needed the treatment at issue; and 4) Cigna failed to specifically address and engage with the Plaintiffs' arguments in favor of coverage.

Cigna contends that it clearly notified the Plaintiffs that Z.S.'s residential treatment center level of care services were not medically necessary as that term is used in the plan, that its denial letters summarized its Medical Directors' notes regarding Z.S.'s symptoms and treatment history, and that Cigna attempted to engage with Z.S.'s treatment providers in a manner required by the Tenth Circuit. Cigna also argues that because none of the treating clinicians who wrote medical necessity letters in support of Z.S.'s appeal were treating Z.S. at the time he was admitted to Elevations, Cigna was justified in not addressing them.

Concerning the Plaintiffs' first argument, the court finds that Cigna adequately cited to the specific provisions of the underlying insurance plan that Cigna contends justified its denials. In all three of its denial letters, Cigna informed the Plaintiffs that it used its Standards and Guidelines/Medical Necessity Criteria for Residential Mental Health Treatment for Children and

Adolescents to review the Plaintiffs' claim for coverage.  Cigna also included information about how the Plaintiffs could view those terms of the plan.  (See AR at 418–19, 444–45, 2652–53.)

But for the reasons stated below, the court agrees with the Plaintiffs' remaining arguments and holds that Cigna acted arbitrarily and capriciously on these grounds.

## A.  Relevant ERISA Principles

Congress enacted ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830 (2003) (quoting Bruch, 489 U.S. at 113).  ERISA does this "in part by regulating the manner in which plans process benefits claims." Id.  For example, ERISA requires plan administrators to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133(1), (2).

When initially denying a claim for benefits, a plan administrator "must convey to the claimant '[t]he specific reason or reasons for the adverse determination' and 'the specific plan provisions on which the determination is based.'" David P., 77 F. 4th at 1312 (quoting 29 C.F.R. § 2560.503-1(g)(1)(i), (ii)).  "ERISA's regulations require an administrator to describe any additional information it needs [to make a coverage determination.]" Id. at 1306 (citing 29 C.F.R. § 2560.503-1(g)(1)(iii)).

The court looks only to the reasons for denial that the plan administrator gave to the claimant when the court reviews the administrator's decision to deny a claim.  See id. at 1312–

13; see also Spradley v. Owners-Ill. Hourly Emps. Welfare Ben. Plan, 686 F.3d 1135, 1140–41

(10th Cir. 2012) ("[W]e will not permit ERISA claimants denied the timely and specific

explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations

devised for purposes of litigation." (citation omitted)).

**B. Cigna Failed to Address "Medical Necessity" and to Adequately Explain its Reasoning for Denying Coverage on that Basis**

Cigna cited to the Plan's "Medical Necessity Criteria for Residential Mental Health

Treatment for Children and Adolescents" when it denied the Plaintiffs' claim.  But ERISA's

regulations require a plan administrator who denies coverage based on "medical necessity" to

provide "Plaintiffs with 'an explanation of the scientific or clinical judgment for th[at]

determination, applying the terms of the plan to the claimant's medical circumstances."  David

P., 77 F.4th at 1312 (citing 29 C.F.R. § 2560.503-1(g)(1)(v)(B)).  The Tenth Circuit has held that

"[s]uch an explanation 'may not be conclusory and any health conclusions must be backed up

with reasoning and citations to the record' before the administrator."  Id. (quoting D.K., 67 F.4th

at 1242).[4]  This court has held that a plan administrator's review and denial of coverage was

arbitrary and capricious in part because the administrators' denial letters "contained no factual

findings to support their conclusions about [the claimant's] mental health[,]" "made no reference

to … evidence [in the record,]" and "contain[ed] little more than conclusory statements such as

'[y]ou could have been treated with outpatient services,' or 'you no longer need 24 hour

structured care[,]' … [or] 'you are no longer harming yourself [and] you are able to control your

---

[4] While the plan in D.K. specifically "required [plan] administrators to provide a written denial
notification which … include[d] … an explanation of the scientific or clinical judgment for the
determination, or a statement applying the terms of the Plan to the Participant's circumstances, or
a statement that such explanation will be provided upon request" for denials based on medical
necessity, 67 F.4th at 1243, ERISA's regulations impose the same requirements on Cigna here.
See 29 C.F.R. § 2560.503-1(g)(v)(B).

behavior.'"   Kerry W. v. Anthem Blue Cross & Blue Shield, 444 F. Supp. 3d 1305, 1313 (D. Utah 2020).

Cigna's denial letters did not adequately apply the terms of the Plan to Z.S.'s medical circumstances.  Cigna's letters contained no factual findings to support their conclusions about Z.S.'s mental health and treatment.  They did not cite to any of Z.S.'s records even though the Plaintiffs submitted hundreds of pages of Z.S.'s records to Cigna on appeal.  See David P., 77 F.4th at 1312–13 (holding that letters containing conclusory statements denying coverage without reference to any treatment records violated the arbitrary and capricious standard); see also Kerry W., 444 F. Supp. 3d at 1313.  Instead, Cigna's letters contained many statements that were simply conclusory.  For example, Cigna's first denial letter read:

> Based upon the available information, [Z.S.'s] symptoms do not meet the Cigna Behavioral Medical Necessity Criteria for Residential Mental Health Treatment for Children and Adolescents for continued stay from 02/05/2019 forward as the treatment provided has led to sufficient improvement in the symptoms and/or behaviors that led to this admission so that you could be safely and effectively treated at a less restrictive level of care.

(AR at 419.)  At the first level of appeal, Cigna asserted, without providing factual support, that Z.S. "did not show a clear need for 24 hour nursing and psychiatric monitoring and intervention" and that Z.S. "had previous and recent opportunity to learn the coping skills needed to participate in less restrictive treatment."  (Id. at 445.)  At the second level of appeal, Cigna also claimed that "[Z.S.] [was] not reported to be exhibiting aggressive behavior or disordered thinking[,]" that he was "showing behavioral control[,]" was "not reported to have medical instability[,]" was "compliant with medications and tolerating them[,]" and that "at the time of [Z.S.'s] admission [he] had not recently demonstrated actions or made serious threats of harm to [himself] or others …."  (Id. at 2653.)  None of these statements were supported by citations to the factual record.  (See id. at 445, 2653.)  At both levels of appeal, Cigna failed to support the following statement

with any facts: "Less restrictive levels of care were available for safe and effective treatment." (Id. at 445, 2653.)  Finally, Cigna failed to explain the relationship between these statements and the medical necessity criteria Cigna referred to when reviewing the claim.  Because Cigna's denials "were not 'backed up with reasoning and citations to the record[,]'" the court finds that they were arbitrary and capricious.  See David P., 77 F.4th at 1313 (quoting D.K., 67 F.4th at 1242).

Cigna attempts to cure this procedural deficit by arguing that its denial letters summarized notes made by the reviewers on appeal that reflected findings from the factual record.  (ECF No. 50 at 15; ECF No. 44 at 13–15.)  Cigna claims its reviewers—Bettina Kilburn, M.D., and Robin Pedowitz, M.D., Medical Director—"engaged in a detailed review of Z.S.'s prior residential treatment … and his current treatment at Elevations" and that their notes mention the issues the Plaintiffs claim Cigna ignored in its letters.  (ECF No. 44 at 13–15.)  Not only did the Plaintiffs not have access to Cigna's internal notes during the administrative review process, but it was not sufficient for Cigna to summarize notes referring to findings from the factual record instead of supporting statements in denial letters by citing to the factual record. See David P., 77 F.4th at 1313 (holding that the court cannot consider reasoning asserted in internal notes when the administrator never conveyed those reasons to a claimant); D.K., 67 F.4th at 1242 ("Review of the explanation provided to claimants must focus on the content of the denial letters." (emphasis added)).

The court is also concerned that Cigna appears to be applying the "medical necessity" criteria inconsistently.  In its February 15, 2019 letter, Cigna denied coverage under that provision in the Plan and explained that "the treatment provided [to Z.S.] has led to sufficient improvement in the symptoms and/or behaviors that led to this admission so that [Z.S.] could be

safely and effectively treated at a less restrictive level of care." (AR at 419.) It is unclear whether the term "treatment" in the letter refers to the treatment Z.S. received before Elevations or the treatment Z.S. received during his first ten days at Elevations. While the letter indicates that no coverage would be provided "from 02/05/2019 forward[,]" suggesting that Z.S. did not meet the "medical necessity" criteria on February 5, 2019, another reading is just as plausible: Z.S.'s symptoms and behaviors that led to his admission to Elevations met the "medical necessity" criteria but those symptoms and behaviors improved during his first ten days at Elevations such that that level of care was no longer necessary. In the following two denial letters, dated January 28, 2020, and April 24, 2020, Cigna contends that Z.S.'s treatment at Elevations was never medically necessary. (See id. at 445, 2653.) This potential inconsistency is made worse by Cigna's failure to cite to the record and failure to give anything but conclusory explanations in support of its denial of coverage.

Moreover, Cigna essentially conceded at the hearing on the motions for summary judgment that there is evidence in the record showing that at various points throughout his stay at Elevations, Z.S.'s treatment may have met the "medical necessity" criteria. But Cigna's letters fail to address this evidence or explain why coverage on those dates was denied. Cigna instead denied coverage for all dates from February 5, 2019, to March 9, 2020, claiming that Z.S.'s treatment at Elevations was never medically necessary. (See id. at 445, 2653.)

In sum, Cigna failed to meet the minimum requirements for explaining why it deemed that Z.S.'s treatment at Elevations was not "medically necessary" in its denial letters. Cigna's denial of coverage warrants reversal on this basis.

**C.  Cigna Failed to Engage in a "Meaningful Dialogue"**

ERISA's implementing regulations provide that "a full and fair review of a claim and the adverse benefit determination" requires that plan administrators "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits" and "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."  29 C.F.R. § 2560.503-1(h)(2)(ii), (iv).

The Tenth Circuit has found that full and fair reviews require a "meaningful dialogue" between the claimant and the administrator.  Ian C. v. United Healthcare Ins. Co., 87 F.4th 1207, 1223 (10th Cir. 2023) (citation omitted).  This "requires 'an ongoing, good faith exchange of information' to ensure that the terms of the plan are applied accurately and the benefits are dispensed fairly.'"  Id. (citation omitted).  Furthermore, "[f]or the claimant, … the 'full and fair' administrative review required by ERISA 'means knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."  David P., 77 F.4th at 1300 (quoting Sage v. Automation, Inc. Pension Plan & Tr., 845 F.2d 885, 893–94 (10th Cir. 1988)).  ERISA's goals are undermined when "plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary."  Spradley, 686 F.3d at 1140 (citation omitted).

"While an administrator is not required to defer to the opinions of a treating physician, a reviewer may not arbitrarily refuse to credit opinions if they constitute reliable evidence from the

claimant."   David P., 77 F.4th at 1310 (cleaned up).   "[R]eviewers 'cannot shut their eyes to readily available information … [that may] confirm the beneficiary's theory of entitlement.'"   Id. at 1310–11 (quoting D.K., 67 F.4th at 1237).

In their first level appeal, the Plaintiffs submitted letters of medical necessity from three of Z.S.'s treatment providers.   (See AR at 2821–26.)   In their letters, each treatment provider recommended long-term residential care for Z.S. and acknowledged that Z.S.'s history of in-patient treatment, medications, and outpatient treatment had not allowed him to improve psychologically.   (See id.)   Cigna's denial letters on appeal did not engage with these opinions or even address them.   Cigna failed to

> acknowledge[] the opinions of [Z.S.'s] treating care givers that [the Plaintiffs] relied upon in [the] administrative appeal.   By simply ignoring treating care givers opinions, after [the Plaintiffs] specifically pointed them out, [Cigna] deprived Plaintiffs of the dialogue ERISA requires between plan administrators and benefits claimants, which is necessary for the statutorily-required full and fair administrative review.

See David P., 77 F.4th at 1311 (citation omitted).   When plan administrators fail to "provid[e] an explanation for rejecting or not following these opinions, that is, not 'engaging' with these opinions, [plan administrators] effectively 'shut [their] eyes' to readily available medical information" in violation of the law.   Id. (quoting D.K., 67 F.4th at 1237).

Cigna argues that these letters were from providers "who treated Z.S. months (and in one case more than a year) before he was admitted to Elevations, only one of whom is a physician[.] … Moreover, each of the three letters Plaintiffs cite is dated from November 2019, which is even further removed from the last date on which any of them had been involved with Z.S.'s care." (ECF No. 44 at 16.)[5]   Cigna did not include this explanation in its denial letters.   And by not

---

[5] The Plaintiffs contend that this argument amounts to a new basis for denying coverage and cannot be considered by the court under David P., 77 F.4th at 1310 (explaining that the Tenth

providing any explanation for rejecting or not following the opinions of Z.S.'s treatment

providers, Cigna failed to engage in a full and meaningful dialogue.  See David P., 77 F.4th at

1311 (quoting D.K., 67 F.4th at 1237).  In any event, the Defendants fail to cite any authority

holding that medical necessity letters supporting coverage must be from treatment providers (and

physicians, specifically) at the time an adolescent is admitted to a residential treatment center.

Cigna also contends that it "attempted to complete the type of 'engagement' with Z.S.'s

treating providers … but that Z.S.'s providers at Elevations refused to cooperate with those

efforts."  (ECF No. 50 at 15.)  But the court finds this argument unavailing because case law is

clear that Cigna's obligations under ERISA are to "engage in meaningful dialogue [with the

Plaintiffs] that includes a full and fair review of the insured's claim."  David P., 77 F.4th at 1311

(quoting D.K., 67 F.4th at 1238); see also Ian C., 87 F.4th at 1223 (explaining that ERISA

requires a meaningful dialogue between the claimant and the administrator).

Cigna further failed to engage in a meaningful dialogue with the Plaintiffs by not

"tak[ing] into account all comments, documents, records, and other information submitted by the

claimant relating to the claim" on appeal."  29 C.F.R. § 2560.503-1(h)(2)(iv).  Notably, Cigna's

denial letters failed to address contrary evidence in the record and the Plaintiffs' arguments on

appeal.  Indeed, at least one of Cigna's denial letters incorrectly claims that "no information

[was] reported that indicates that this level of care was necessary[.]"  (AR at 445.)  The record

reflects otherwise.  While Elevations clinical staff deemed Z.S.'s risk level for "Self-

Harm/Suicide Risk" to be "Mild" on the day of his admission, (id. at 3935), Z.S. later

_____

Circuit will not consider newly asserted reasons for denying coverage where the administrator
failed to raise them in their correspondence with plaintiffs), but the court interprets this argument
as one made in response to the assertion that Cigna failed to engage in a meaningful dialogue
with the Plaintiffs.

"admit[ted] [that he had had] suicidal and self-harm urges … upon admission." (Id. at 3923 (emphasis added).) Moreover, two days after Z.S. was admitted, clinicians increased Z.S.'s risk level. (Id. at 3920.) The record also shows that Z.S. engaged in self-harming behavior around two weeks before being admitted to Elevations (id. at 3923, 4795), a time when Z.S. was at Polaris and during which, according to Cigna, the "treatment resulted in clinical improvement such that [Z.S.] … no longer require[ed] treatment at a 24 hour level of care." (Id. at 2653.) In addition, on several days throughout March, April, and May 2019, Elevations clinical staff deemed that "[Z.S.] [was] at high risk for self-harm and suicidal behavior outside of a restricted environment[.]" (Id. at 3759, 3764; see also id. at 3466, 3476, 3540, 3664, 3729, 3734.) Although Cigna acknowledged that Z.S. had a long-term history of mental illness and treatment (see id. at 445, 2653), Cigna's denial letters failed to address the information in the record demonstrating that, as discussed above, Z.S.'s parents made numerous attempts to treat him at less intensive levels of care without success.

Cigna's letters should have addressed contrary evidence and explained how it weighed competing evidence to reach its conclusion on whether it would provide coverage for the claim. Cigna also should have addressed the Plaintiffs' arguments on appeal.

### D.  Similarity to Other Cases

The Defendants claim that the Tenth Circuit cases on which the Plaintiffs largely rely (i.e., David P., D.K., and Ian C.) are factually distinct from this case and that those differences support a finding that Cigna's denial of coverage was not arbitrary and capricious. For instance, Cigna argues that it never shifted its denial rationale throughout the review process, as the plan administrators were alleged to have done in David P., 77 F.4th at 1309, and D.K., 67 F.4th at 1235, nor does this case involve addressing whether a plan administrator failed to consider an

independent ground for coverage under the Plan, such as substance abuse.  See David P., 77 F.4th at 1309; see also Ian C., 87 F.4th at 1220.

The court is not persuaded by this argument.  In David P., in addition to finding that the plan administrator's failure to address whether the claimant's treatment for substance abuse provided an independent ground for coverage, the Tenth Circuit found that the administrator's failure to engage with the opinions of the claimant's treating caregivers and failure to adequately address "medical necessity" provided separate grounds for relief.  77 F.4th at 1309–13.  Similarly, the Tenth Circuit held in D.K. that the plan administrator acted arbitrarily and capriciously for failing to "engage with the medical opinions of [the claimant's] treating professionals" and "contain reasoned analyses or specific citations to the medical record" in its denial letters.  67 F.4th at 1235.  While the plaintiffs in D.K. also alleged that the plan administrator "demonstrated a shifting and inconsistent rationale for denying benefits[,]" the Tenth Circuit "decline[d] to consider" that independent ground for relief because it upheld the other grounds for relief.  67 F.4th at 1235 n.5.  And although the "main argument on appeal [in Ian C.] [was] that [the plan administrator] disregarded … substance abuse as an independent ground for coverage[,]" 87 F.4th at 1220, the court relies on Ian C. in this Order and Memorandum Decision for its statements of relevant principles of law—which are clearly controlling.

While Cigna maintains it never shifted its basis for denying the claim for coverage, the court refers to the above discussion of what appears to be an inconsistent application of the term "medical necessity."  In Cigna's first denial letter, Cigna's reason for denying coverage is ambiguous.  Cigna may have denied coverage because Z.S. did not meet the "medical necessity" criteria on February 5, 2019, or it may have denied coverage because the symptoms and

behaviors leading to Z.S.'s admission to Elevations improved at Elevations such that Cigna deemed that treatment at Elevations was no longer necessary.  In upholding its decision to deny coverage twice on appeal, Cigna then claimed that Z.S.'s treatment at Elevations <u>never</u> met the "medical necessity" criteria in the Plan.  To the extent Cigna first denied coverage because Z.S.'s first ten days of treatment at Elevations caused an improvement of the symptoms and behavior that led to his admission, Cigna's basis for denying the claim for coverage shifted throughout the appeals process.

For the above reasons, Cigna's ERISA procedural violations were arbitrary and capricious and justify reversing Cigna's denial of benefits.

## II.   Substantive Ground for Relief

Because the court has found that Cigna's failure to adequately address "medical necessity," explain its reasoning for denying coverage on that basis, and engage in a "meaningful dialogue" were arbitrary and capricious, the court need not address the Plaintiffs' substantive argument, which is that even if Cigna's denial letters were adequate, the record establishes that Z.S.'s treatment was medically necessary.  (ECF No. 40 at 25–26); <u>see</u> <u>R.E.</u>, 2023 U.S. Dist. LEXIS 229908, at *24 (declining to address the plaintiffs' merit-based argument because the plaintiffs were entitled to reversal based on their procedural argument).  As discussed above, there is at least some evidence in the record suggesting that Z.S. met Cigna's "medical necessity" criteria on February 5, 2019—the day of his admission to Elevations—and at various points after. But without a procedurally adequate explanation from Cigna about why the claim for coverage was denied, especially one that addresses and engages with contrary evidence and the Plaintiffs' arguments on appeal, the court is unable to review whether Cigna's decision was correct on the merits.

### III.     Remedy

Having determined that Cigna's denial of coverage for Z.S.'s residential mental health treatment at Elevations was arbitrary and capricious on multiple grounds, the court must determine what remedy applies.  The court "may either remand the case to the plan administrator for a renewed evaluation of the case or order an award of benefits."  Kerry W., 444 F. Supp. 3d at 1313 (citing DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161, 1175 (10th Cir. 2006)). "Which of these two remedies is proper in a given case, however, depends on the specific flaws in the plan administrator's decision.  '[W]hen an ERISA administrator fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision,' the remedy 'is to remand the case to the administrator for further findings or explanation.'"  Id. (quoting Caldwell, 287 F.3d at 1288).  In contrast, an award of benefits "is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant would have continued to receive the benefits or where there [was] no evidence in the record to support a termination or denial of benefits." DeGrado, 451 F.3d at 1176 (citation omitted).

The Tenth Circuit has found that remand was appropriate where the plan administrator committed procedural errors similar to those Cigna made here.  See David P., 77 F.4th at 1315 (remanding where plan administrator failed to engage in meaningful dialogue and explain "medical necessity").  Moreover, given the conflicting evidence in the record, the court cannot say that there was no evidence in the record to support Cigna's denial of benefits, or that the Plaintiffs were clearly entitled to the claimed benefits.  Id.; see also DeGrado, 451 F.3d at 1176 (holding that remand was the proper remedy because it was "apparent that the evidence regarding [the plaintiff's] work status during the time between his two periods of disability was conflicting").  This case is not "so clear cut that it would be unreasonable for the plan

24

administrator to deny the application for benefits on any ground." James C. v. Aetna Health and Life Ins. Co., 499 F. Supp. 3d 1105, 1123 (D. Utah 2020) (citing Caldwell, 287 F.3d at 1289). And while the court finds that Cigna violated ERISA's procedural requirements, Cigna at least knew the standards by which the decision to deny the Plaintiffs' claim was made and produced some evidence that it considered specific reasons in denying the claim. See Caldwell, 287 F.3d at 1289 (citing Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993) (declining to remand to administrator where the evidence clearly showed that administrator abused its discretion because administrator "admitted that it does not know the standards by which the decision to deny the [plaintiffs'] claim was made and it has produced no evidence that it even remotely considered any specific reasons in denying the claim")). All this together leads the court to find that remand is the appropriate remedy in this case.

The Plaintiffs assert that this case is more like D.K., in which the Tenth Circuit affirmed the district court's award of benefits. 67 F.4th at 1243–44. But the basis for the court's award of benefits in D.K. rested on distinguishable facts. In D.K., the court awarded benefits because the "Defendants gave inconsistent denial rationales and erroneously interpreted and applied the Plans' terms." 2021 WL 2554109, at *14. In the administrator's first two denial letters, the administrator explained that it was denying coverage because the service the plaintiffs sought coverage for was unavailable under the plan. Id., at *4. But then in the administrator's third and fourth denial letters, and its external review, the administrator informed the plaintiffs that it was denying coverage because the treatment sought was not medically necessary. Id., at *4–5. And in stating that the service the plaintiffs sought coverage for was no longer available under the plan, the administrator relied on an exclusion that had been eliminated from the plan. Id., at *3–4. The court in D.K. also noted that the administrator had agreed to cover the beneficiary's

25

treatment for the first 90 days before deciding that coverage would no longer be provided.  Id., at

*3.  In this case, Cigna never agreed to cover any of Z.S.'s treatment, and it never relied on terms

of the Plan that were not in effect.

Accordingly, the court will remand this matter to Cigna for further findings and

explanation.  On remand, Cigna may not "reevaluate [the] claim based on a rationale not raised

in the administrative record … and not previously conveyed to Plaintiffs."  David P., 77 F.4th at

1316 (citation omitted).

## ORDER

For the foregoing reasons, the court orders as follows:

1.      The court GRANTS the Plaintiffs' motion for summary judgment (ECF No. 40) in

part.

2.      The court DENIES Cigna's and the Plan's motions for summary judgment (ECF

Nos. 44 & 45).

3.      The court remands the matter to Cigna for further consideration consistent with

this Order and Memorandum Decision.

4.      The parties must file a status report informing the court about the status of the

remand within three months of the date of this order.

DATED this 8th day of July, 2024.

BY THE COURT:

TENA CAMPBELL
United States District Judge

26